# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| KIRK PRUITT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No.: 5:17-cv-1764-LCB |
| | ) |
| CHARTER COMMUNICATIONS, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Kirk Pruitt filed this case on October 17, 2017 (doc. 1). Judge Madeline Hughes Haikala, to whom the case was then assigned, denied a previous round of motions to dismiss and ordered plaintiff to file an amended complaint that "compl[ied] with Federal Rules of Civil Procedure 8(a), 8(d), 10(b), and 11(b)," "contain[ed] a separate count for each claim against one defendant and a factual basis for that claim only," and "include[d] all of Mr. Pruitt's claims in this action." (doc. 23, at 2-3).

Plaintiff filed a 105-page amended complaint on January 10, 2018, naming eleven defendants: (1) Charter Communications, Inc. d/b/a Spectrum Communications, Inc. ("Charter"), his former employer; (2) Thomas M. Rutledge, Charter's CEO; (3) Amanda Field, Charter's Regional Director and Vice President

of Residential Direct Sales; (4) Craig O'Rourke, Charter's State Director and Manager of Sales Operations; (5) Stacia Freeway, Charter's Director of Human Resources; (6) R.C. Brown, Charter's Regional Director of Human Resources and Vice President of Sales and Marketing; (7) Matt Webb, Charter's State Director and Manager of Direct Sales; (8) Lumumba Pride, plaintiff's supervisor at Charter; (9) Brenda Baird, L.P.C., d/b/a/ Baird Counseling & EAP Services, plaintiff's former therapist; (10) Gagandeep S. Dhaliwal, M.D., plaintiff's former psychiatrist; and (11) Sedgwick Benefits Management Services, Inc. ("Sedgwick"), the company that apparently manages leave and disability requests for Charter employees. Defendants Charter, Rutledge, Field, O'Rourke, Freeway, Brown, Webb, and Pride are referred to collectively as "the Charter defendants." Plaintiff asserts federal claims pursuant to the Family Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981 & 1983, and the Fourteenth Amendment to the United States Constitution. He also asserts state law claims for wrongful termination, negligence, disability discrimination, harassment, outrage, defamation, breach of fiduciary duty, and breach of contract. (doc. 25).

The case currently is before the Court on Dhaliwal's motion to dismiss and/or motion to strike (doc. 30), Sedgwick's motion to dismiss for insufficiency of service of process (doc. 31), the Charter defendants' motion to dismiss (doc.

34), and plaintiff's two motions to appoint counsel (docs. 36 & 43). After a through review of the motions, briefs, and pleadings, the Court concludes that Sedgwick's motion should be granted in its entirety, and the motions filed by Dhaliwal and the Charter defendants should be granted in part and denied in part. Plaintiff's motions to appoint counsel also will be denied.

## I. STANDARD OF REVIEW

Rule 12(b)(6) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the Court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Mills v. Foremost Insurance Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008) (quoting *Castro v. Secretary of Homeland Security*, 472 F.3d 1334, 1336 (11th Cir. 2006)). Moreover, "the court limits its consideration to the pleadings and exhibits attached thereto." *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 679. "When there are well-

pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Thus, the Supreme Court has "suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 567 (2007)).

"'*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)).

## II. DISCUSSION

To begin, this Court agrees with defendants that plaintiff's amended complaint fails to satisfy many of the pleading requirements specified by Judge Haikala and the Federal Rules of Civil Procedure. Plaintiff's 105 pages of

rambling rhetoric cannot be described as "short," "plain," "simple," "concise," or "direct." *See* Fed. R. Civ. P. 8(a)(2) (providing that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); Fed. R. Civ. P. 8(d)(1) ("Each allegation must be simple, concise, and direct."). His numbered paragraphs are not limited to a single set of circumstances, and he did not state each claim founded upon a separate transaction or occurrence in a separate count or defense. *See* Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ."). He did not fully comply with Judge Haikala's directive to include "a separate count for each claim against one defendant and a factual basis for that claim only." (doc. 23, at 2-3). The amended complaint also bears many characteristics of an impermissible "shotgun pleading," including containing "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," "not separating into a different count each cause of action or claim for relief," and "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

Given plaintiff's *pro se* status, he will be allowed one final opportunity to cure those pleading deficiencies before any claims are dismissed. Even so, some portions of the amended complaint suffer from more substantive problems that could not be cured by another amendment. Those issues will be addressed so that the scope of any future pleadings can be narrowed.

## A.   Dhaliwal's Motion to Dismiss

Plaintiff alleges that Dr. Dhaliwal used him as a "guinea pig" to try out various psychiatric drugs because the doctor received a kickback payment from pharmaceutical companies (doc. 25, ¶ 73). Plaintiff informed Dr. Dhaliwal during their first appointment on March 14, 2017, that he had suffered a panic attack a week earlier. Dr. Dhaliwal asked plaintiff to fill out an anxiety questionnaire, and plaintiff informed the doctor that he was applying for disability benefits and would need some related forms completed. Dr. Dhaliwal told plaintiff he would complete those forms, but that plaintiff first needed to start taking medication. Plaintiff and Dr. Dhaliwal conferred to choose a medication from a "catalog of drugs" (doc. 25, ¶¶ 75-76). Plaintiff took his medication and also attended counseling appointments (doc. 25, ¶ 77). Two weeks later, plaintiff asked Dr. Dhaliwal to complete his disability forms, but Dr. Dhaliwal refused because the forms concerned cognitive functioning, and he did not perform cognitive functioning tests. Dr. Dhaliwal offered to refer plaintiff to another psychiatrist who would perform the required

tests, but plaintiff could not afford to pay that doctor, so Dr. Dhaliwal offered, for free, to complete the portions of the form that did not relate to cognitive functioning and share his office notes (doc. 25, ¶ 78). Plaintiff became upset, and Dr. Dhaliwal responded, "'YOU SEE, That Is Why I Do Not Take Patients LIKE YOU! I Try to Help and When It Is Not Enough . . .,' 'I WILL NEVER TAKE ANOTHER PATIENT LIKE YOU AGAIN!'" (doc. 25, ¶ 80 (capitalization and punctuation in original)). Dr. Dhaliwal called plaintiff later that evening to apologize for his behavior (doc. 25, ¶ 82). Plaintiff asserts that he and Dr. Dhaliwal had a contract: he agreed to take prescription medications for which Dr. Dhaliwal received a financial kickback, and Dr. Dhaliwal agreed to treat plaintiff's condition and complete his disability paperwork. It is not entirely clear from the amended complaint, but plaintiff appears to allege that Dr. Dhaliwal breached that contract when he failed to complete plaintiff's paperwork, and that he was harmed when his claim for benefits was denied (doc. 25, ¶ 83).

Plaintiff asserts that Dr. Dhaliwal's actions constituted FMLA interference, breach of contract, breach of oral contract, breach of implied contract, breach of duty of care, breach of good faith and fair dealing, breach of the Hippocratic Oath, disability discrimination, and negligence. It is not conceivable for plaintiff's factual allegations to give rise to a claim for relief under the FMLA or ADA. His

remaining state law claims all fall under the umbrella of either negligence or breach of contract.[1]

To the extent plaintiff alleges claims arising out of a breach of Dr. Dhaliwal's duty of care, those claims are governed by the Alabama Medical Liability Act ("AMLA"), Ala. Code § 6-5-480 *et seq.* & § 6-5-551 *et seq.* According to that statute:

> In any action for injury, damages, or wrongful death, *whether in contract or in tort*, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action. *The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. . . .* Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted.

Ala. Code § 6-5-551 (emphasis supplied). The Alabama Supreme Court has held that the standard for pleading claims under the AMLA is similar to the heightened standard for pleading fraud claims with specificity. *Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993).

---

[1] The Court notes that plaintiff failed to provide any substantive response to Dr. Dhaliwal's arguments for dismissal. Instead, he only reiterated some of the allegations of his complaint and raised issues with the amount of time it took Dr. Dhaliwal to serve him with the motion to dismiss. (*see* doc. 35 (Plaintiff's Response to Dr. Dhaliwal's Motion to Dismiss)).

> "[A]lthough every element of the cause of action need not be stated with particularity, the plaintiff must give the defendant health care provider fair notice of the allegedly negligent act and must identify the time and place it occurred and the resulting harm. If the complaint affords the defendant health care provider fair notice of these essential elements, the courts should strive to find that the complaint includes the necessary[ detail]."

*Id.*

Here, plaintiff has failed to plausibly allege any act or omission on the part of Dr. Dhaliwal that constituted a breach of the relevant standard of care. This Court was unable to locate any applicable case law that recognized a claim for medical malpractice based upon a health care provider's failure or refusal to complete paperwork for a patient to obtain disability benefits. Indeed, any such claim would be implausible, because it does not concern the provision of medical care.

To the extent that plaintiff intended to rely upon a regular contract theory, outside the context of Dr. Dhaliwal's provision of medical care, that claim can proceed. Under Alabama law, "[t]he basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement." *Stacey v. Peed*, 142 So. 3d 529, 531 (Ala. 2013) (citing *Hargrove v. Tree of Life Christian Day Care Center*, 699 So.2d 1242, 1247 (Ala.1997)). Plaintiff plausibly alleged each of those elements. He stated that Dr. Dhaliwal offered to provide him prescription medication in exchange for filling out disability

forms, and he accepted that offer by taking the medication and establishing a treatment relationship with Dr. Dhaliwal. The consideration supporting the agreement was, for Dr. Dhaliwal, "Establishment of the Doctor/Patient Agreement Record and Commission Pay for Prescriptions," and, for plaintiff, receiving treatment for his anxiety disorder and having his disability paperwork completed. Plaintiff alleges that he and Dr. Dhaliwal mutually agreed to those terms, and that both parties were competent to enter into the agreement (doc. 25, ¶ 83). Additionally, even though plaintiff did not make this allegation explicit in his amended complaint, he has placed Dr. Dhaliwal on fair notice that he is claiming Dr. Dhaliwal breached the contract by failing to complete the paperwork, and that he suffered damages as a result because he did not receive his disability benefits. *See Capmark Bank v. RGR, LLC*, 81 So. 3d 1258, 1267 (Ala. 2011) ("In order to recover on a breach-of-contract claim, a party must establish: (1) the existence of a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) damages.") (citing *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002)).

Finally, there is no problem with the Statute of Frauds, as Dr. Dhaliwal suggests. The Statute of Frauds requires a written contract for "'any agreement which *by its terms* cannot be performed *within one year*.'" *Alabama Agricultural & Mechanical University v. Jones*, 895 So. 2d 867, 871 (Ala. 2004) (quoting *Abbott*

*v. Hurst*, 643 So.2d 589, 592 (Ala. 1994)) (emphasis in original). Here, there was no specified time frame for performance of the parties' alleged agreement, and Dr. Dhaliwal could have performed under the agreement in less than a year by completing plaintiff's disability paperwork. Indeed, plaintiff alleges that he presented the paperwork only *two weeks* after beginning his treatment relationship with Dr. Dhaliwal. Thus, even though plaintiff does not allege the existence of a written contract between him and Dr. Dhaliwal, the Statute of Frauds does not prevent his breach of contract claim.

In summary, the *only* viable claim plaintiff has against Dr. Dhaliwal is a state law claim for breach of contract, unrelated to the doctor's provision of medical treatment. All other claims will be dismissed.

## B. Sedgwick's Motion to Dismiss

Sedgwick asserts that plaintiff's claims against it[2] should be dismissed for insufficient service of process. *See* Fed. R. Civ. P. 12(b)(5); Fed. R. Civ. P. 4(m). Plaintiff served his original complaint on Sedgwick at an address that was different from the address of Sedgwick's registered agent for accepting service (doc. 31-1, at 2-3; doc. 11, ¶ 2). After plaintiff filed his amended complaint, he did not make any further attempts to serve it on Sedgwick. He also has not made any further attempts at service despite being aware of the deficiencies alleged by Sedgwick

---

[2] It is not clear from plaintiff's amended complaint, but he appears to assert his FMLA, ADA, and state law claims against Sedgwick.

since at least November 20, 2017 (*see* doc. 11). He even stated in response to Sedgwick's motion to dismiss the amended complaint that he would provide the Clerk of Court and U.S. Marshal with the address of Sedgwick's registered agent, thereby enabling service to be completed (doc. 32, ¶ 3), but there is no indication that he ever did so.

Plaintiff asserts that he did not re-attempt service of process because he believed Judge Haikala had already deemed his previous attempts to be sufficient. Judge Haikala denied as moot Sedgwick's first request to require plaintiff's proper service *after* plaintiff filed an amended complaint (*see* docs. 11, 23, 32). That order was not, as plaintiff believes, a ruling on the merits of the motion to require proper service. It was an attempt to re-start the proceedings with the amended complaint as the relevant pleading. Proper service was still required, and plaintiff acknowledged as much by stating in his response to Sedgwick's motion to dismiss the amended complaint that he would work with the Clerk of Court and U.S. Marshal to effect service.

Finally, plaintiff's *pro se* status does not excuse his failure to properly serve Sedgwick. In *Cooley v. Ocwen Loan Servicing*, LLC, 729 F. App'x 677 (11th Cir. 2018), the Eleventh Circuit held that the district court did not abuse its discretion by dismissing a *pro se* plaintiff's claims for failure to serve. The plaintiff had

notice of   service deficiencies but made no further attempts to effect proper

service, despite being allowed extra time.  *Id.*  As the Eleventh Circuit held:

> The Federal Rules of Civil Procedure exist "to secure the just, speedy,
> and inexpensive determination of every action and proceeding."  Fed.
> R. Civ. P. 1.  As the district court's ruling reflects, it would further
> none of these purposes to let this action continue against Bank of
> America where Cooley had plenty of time and opportunity to serve it
> properly or seek a waiver of service.

*Id.* at 682-83.   In other cases, the Eleventh Circuit has also held that a *pro se*

plaintiff's claims can be dismissed for failure to serve even if the defendant

becomes aware of the lawsuit by other means.  *See Albra v. Advan, Inc.*, 490 F.3d

826, 829 (11th Cir. 2007) (citing *Schnabel v. Wells*, 922 F.2d 726, 728 (11th

Cir.1991)) ("A defendant's actual notice is not sufficient to cure defectively

executed service.").

    In summary, plaintiff's claims against Sedgwick are due to be dismissed for

failure to properly effect service of process.   It is not necessary to consider

Sedgwick's additional argument that plaintiff's claims are substantively flawed.

## C.      The Charter Defendants' Motion to Dismiss

The Charter defendants (Charter, Rutledge, Field, O'Rourke, Freeway, Brown, Webb, and Pride) have moved to dismiss most of the claims asserted against them.[3]

### 1.      Constitutional claims

42 U.S.C. § 1983 provides, in pertinent part, that:

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . . [emphasis supplied]

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby,* 418 F.3d 1256, 1258 (11th Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Those requirements also apply to claims under the Fourteenth Amendment. *See Stout by Stout v. Jefferson County Board of Education*, 882 F.3d 988, 1007 (11th Cir. 2018) ("To be sure, only a state actor can violate the Fourteenth Amendment."). Because

---

[3] It is not clear from plaintiff's complaint, but he appears to assert *all* of his claims against the Charter defendants. As with Dr. Dhaliwal, plaintiff failed to provide any substantive response to most of the Charter defendants' arguments in support of dismissal of his complaint.

all of the Charter defendants are private entities and individuals, and plaintiff has not alleged that they were acting under color of state law, plaintiff cannot state a claim for relief against them pursuant to the Fourteenth Amendment, or any other constitutional claim pursuant to 42 U.S.C. § 1983.

## 2.    ADA

"An employee making a discrimination claim under the ADA must first exhaust [his] administrative remedies by filing a Charge of Discrimination with the EEOC." *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018) (*Maynard v. Pneumatic Products Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001)).  In the EEOC charge attached to the original complaint, plaintiff complained of race discrimination and retaliation (doc. 1, at 11).  He did not check the box for disability discrimination or make any allegations of disability discrimination, and the Court record does not indicate that an amended charge was filed.  Accordingly, plaintiff has not exhausted his administrative remedies with regard to his ADA claim, and that claim will be dismissed.

## 3.    Title VII

Charter did not move to dismiss plaintiff's Title VII discrimination claim, but the individual Charter employees named as defendants did.  They rightly assert that they cannot be held liable under the statute because they were not plaintiff's employer.  *See Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) ("[R]elief

under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act."). Accordingly, plaintiff's Title VII claim against defendants Rutledge, Field, O'Rourke, Freeway, Brown, Webb, and Pride will be dismissed.

Plaintiff's Title VII claim against Charter will remain pending, but plaintiff will be required to replead it. All he states in support of the claim is: "Pro Se Plaintiff DECLARES and Again Claim 'Parallel Claims.' Whereby, the said Plaintiff Claims the Preceding Pleadings Have Already Exposed 'SELF EVIDENT FACTS' TO 'SELF BUTTRESS' Anymore, Unnecessary Claims Where APPLICABLE, APPROPRIATE and CONCURRENT with. PLEASE SEE ALL PREVIOUS PLEADINGS." (doc. 25, ¶ 99 (capitalization and emphasis in original)). That is not sufficient to place Charter on notice of plaintiff's claims and provide Charter a meaningful opportunity to respond.

### 4.   42 U.S.C. § 1981

42 U.S.C. § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

"The elements of a cause of action under § 1981 are: '(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute.'" *Lopez v. Target Corp.*, 676 F.3d 1230, 1233 (11th Cir. 2012) (quoting *Kinnon v. Arcoub, Gopman & Associates, Inc.*, 490 F.3d 886, 891 (11th Cir. 2007) (in turn quoting *Jackson v. BellSouth Telecommunications.*, 372 F.3d 1250, 1270 (11th Cir. 2004))).

To support his § 1981 claim, plaintiff states: "Pro Se Plaintiff DECLARES and Again Claim 'Parallel Claims.' Whereby, the said Plaintiff Claims the Preceding Pleadings Have Already Exposed 'SELF EVIDENT FACTS' TO 'SELF BUTTRESS' Anymore, Unnecessary Claims Where APPLICABLE, APPROPRIATE and CONCURRENT with. PLEASE SEE ALL PREVIOUS PLEADINGS." (doc. 25, ¶100 (capitalization and emphasis in original)). As with plaintiff's Title VII claim, that allegation is not sufficient to place the Charter defendants on notice of plaintiff's claims and provide those defendants a meaningful opportunity to respond. Accordingly, plaintiff will be allowed to replead this claim.

### 5. FMLA

The FMLA guarantees an eligible employee the right to take up to twelve workweeks of unpaid leave each year "[b]ecause of a serious health condition that

makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Any employee who takes protected leave is entitled to be reinstated to his previous position, or an equivalent one, upon return from leave. 29 U.S.C. § 2614(a). An employee claiming an FMLA violation can assert "two types of claims: 'interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act.'" *Hurlbert v. St. Mary's Health Care System., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (quoting *Strickland v. Water Works and Sewer Board of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001)). To establish his interference claim, plaintiff must prove "'by a preponderance of the evidence that he was entitled to the benefit denied.'" *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1267 (11th Cir. 2017) (quoting *Strickland*, 239 F.3d at 1207). To establish his retaliation claim, plaintiff must prove that the Charter defendants "'intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right.'" *Jones*, 854 F.3d at 1270 (quoting *Strickland*, 239 F.3d at 1207).

Plaintiff alleges that defendant Brown "suddenly" allowed him to return to work after an eight-month FMLA leave of absence on November 1, 2017, just two

weeks after he filed this case on October 17, 2017, even though Brown had denied plaintiff's two previous requests to return to work (doc. 25, ¶ 18). Defendant Webb prevented plaintiff's co-workers from helping him quickly re-acclimate to the work environment, because Webb wanted plaintiff to complete "New Hire Training" (doc. 25, ¶ 21). Defendant Pride took plaintiff's work tablet and withheld work from him. (*id.*). Even though plaintiff was forced to return in the status of a hew hire, he did not receive any of the benefits normally allowed to new hires, including "Addresses to Work, Lowered Threshold of Sales Required, Ramp-Up Pay to Offset the Short Time Allowed During Training, [and] Discipline Reset to New-Hire Status" (doc. 25, ¶ 48). Plaintiff asserts that the Charter defendants violated the FMLA by failing to reinstate him to his same or an equivalent position; failing to provide him work, equal pay, and benefits; failing to adjust sales expectations and quotas; penalizing him for his time off; terminating him after he returned from FMLA leave; committing "Subordinate Bias/Rubber Stamp"; failing to continue his health benefits while he was on leave; failing to treat him with dignity and respect; being "Cold, Heartless and Opportunistic"; and "Effectively Demot[ing] and Humiliat[ing]" him (doc. 25, ¶ 22). The Charter defendants also terminated plaintiff's employment on November 13, 2017, allegedly in retaliation for his exercise of FMLA rights (doc. 25, ¶ 23).

Plaintiff's allegations defeat his claim for FMLA interference. He has not alleged that any defendant denied him the right to take leave under the FMLA; instead, he is complaining about the treatment he received after returning from leave. The problem is that plaintiff's leave lasted for eight months, far longer than the 120 days protected by the statute. Because his leave exceeded the statutory period, he was not entitled to reinstatement. *See Jones*, 854 F.3d at 1268 ("Relevant caselaw suggests that an employer does not interfere with an employee's right to reinstatement if that employee is terminated after taking leave in excess of the 12 weeks permitted by the FMLA.") (citing *Armbrust v. SA-ENC Operator Holdings, LLC*, No. 2:14-CV-55-FTM-38CM, 2015 WL 3465760, at *5 (M.D. Fla. June 1, 2015); *Bender v. City of Clearwater*, No. 8:04-CV-1929-T23EAJ, 2006 WL 1046944, at *11 (M.D. Fla. Apr. 19, 2006)); *see also Freeman v. Koch Foods of Alabama*, 777 F. Supp. 2d 1264, 1289 (M.D. Ala. 2011) ("[T]he right to reinstatement terminates once the twelve weeks of FMLA leave are finished.").

Plaintiff attempts to avoid that conclusion by arguing that the Charter defendants actually denied his request to return to work on a much earlier date, immediately after his request for disability benefits was denied, and that Charter used the excuse that plaintiff was not medically able to perform his job duties. According to plaintiff, defendant Brown "FORCED EXTENDED LEAVE UPON

PLAINTIFF, WOULD NOT ALLOW SAID PLAINTIFF TO RETURN TO WORK AND DENIED (HIS) TWO REASONABLE ACCOMMODATION REQUEST[S]" (doc. 38, ¶ 9 (capitalization in original)). An almost identical argument was rejected by the Middle District of Alabama in *Brown v. Montgomery Surgical Center*, No. 2:12-CV-553-WKW, 2013 WL 1163427 (M.D. Ala. Mar. 20, 2013). There, the plaintiff alleged that her employer denied her FMLA right to reinstatement to her previous position, when the reinstatement would have required an accommodation for a disability that arose after she went on leave. *Id.* at *4. Because "[t]he leave provisions of the FMLA are wholly distinct from the reasonable accommodation obligations of employers covered under the ADA," and "an employee who is unable to perform an essential job function is not entitled to reinstatement upon returning from FMLA leave," the Middle District of Alabama concluded that the employer did not have to provide the plaintiff with an accommodation before reinstating her, and the plaintiff had not stated a viable claim for FMLA interference. *Id.* at *5 (citing *Gilliard v. Georgia Department of Corrections*, 500 F. App'x 860, 864 (11th Cir. 2012); *Grace v. Adtran, Inc.*, 470 F. App'x 812, 816 (11th Cir. 2012)) (internal citation marks omitted). Even though the *Brown* decision was unpublished, this Court finds it persuasive and consistent with Eleventh Circuit law. Based upon *Brown,* the Court finds that Charter was

not required to provide plaintiff with any kind of accommodation in order to speed up his return to work from FMLA leave.

Plaintiff's FMLA retaliation claim requires a separate analysis. The Charter defendants all argue that such a claim is not possible because too much time passed between the expiration of plaintiff's 120-day leave period in June of 2017 and his subsequent termination in November of 2017,[4] thereby severing the causal connection between the two events. *See, e.g., Smith v. BellSouth Telecommunications, Inc.,* 273 F.3d 1303, 1314 (11th Cir. 2001) (holding that a plaintiff in an FMLA retaliation case must prove a causal connection between the plaintiff's protected FMLA activity and the employer's subsequent adverse employment action). But defendants did not cite any authority or advance any argument regarding why June 2015 should be considered the relevant date for plaintiff's protected activity. The Court concludes that plaintiff should be allowed another opportunity to replead his FMLA retaliation claim, and that defendants should be allowed the opportunity to further develop their arguments, if any, in support of dismissal of the further amended pleading.

Individual defendants Rutledge, Field, O'Rourke, Freeway, Brown, Webb, and Pride assert that the FMLA retaliation claim cannot proceed against them because they were not plaintiff's employer. But plaintiff has asserted that those

---

[4] The Charter defendants refer to the relevant dates as being in June and November of 2015, not 2017. The Court assumes that reference is a typographical error.

defendants "EXECUTE THE RULES AND POLICIES OF THE COMPANY AND UNDER THAT CAPACITY ALSO, CONDUCT DIRECT, DAY TO DAY SUPERVISION OVER SUBORDINATE EMPLOYEES, IN THE EMPLOYER'S SCOPE OF RESPONSIBILITIES ARE SUCH THINGS AS HIRING, FIRING, DISCIPLINE, DECIDING TO DENY REASONABLE ACCOMMODATIONS, etc" (doc. 38, ¶ 6 (capitalization in original)).  That allegation is not sufficient to place defendants on notice of the claims against them, but it is sufficient to warrant allowing plaintiff another opportunity to plead the claim.  When he does replead, he should be careful to state which, if any, of the individual defendants are subject to the FMLA retaliation claim, and the basis for holding *each* of those defendants individually liable.

In summary, plaintiff's FMLA interference claim will be dismissed, but his FMLA retaliation claim will remain pending against all of the Charter defendants, subject to the requirement that plaintiff replead the claim.

## 6.   State law claims

Plaintiff barely mentioned his state law claims in his response to the Charter defendants' motion to dismiss (*see* doc. 38).   For that reason, and for the substantive reasons set forth below, many of the state law claims are due to be dismissed.

### a.    Wrongful termination

Plaintiff asserts that defendants Charter and Brown wrongfully terminated him as a result of race discrimination, in retaliation for engaging in protected activity, and in violation of their duty of good faith and fair dealing (doc. 25, ¶ 85). To the extent plaintiff's claims are also covered by federal statutes, they are addressed in other portions of this opinion.  To the extent plaintiff intends to assert a state law tort claim for wrongful termination, that claim is barred by the Alabama doctrine of employment-at-will.  *See Barton v. Alabama Electric Co-op., Inc.*, 487 So. 2d 884, 885 (Ala. 1986) ("First, in the absence of a contract calling for employment for a particular length of time, any wrongful termination claim is barred by Alabama's employment-at-will doctrine. . . .   No such contract is alleged.") (citing *Meeks v. Opp Cotton Mills, Inc.*, 459 So. 2d 814 (Ala. 1984)).

### b.    Negligence

Plaintiff alleges that defendant Rutledge ignored an email he sent on October 20, 2015, complaining of "gross corporate malfeasance" (doc. 25, ¶ 86(a)).  He also alleges that unspecified defendants prevented his former supervisor, Kelly Scoggins, from assisting him in the prosecution of a Charter customer who had harassed him with a shotgun (doc. 25, ¶ 86(b)).  He also appears to assert that unspecified defendants continued to give him work assignments in dangerous areas, despite agreeing that they would remove those areas from plaintiff's work

route (doc. 25, ¶¶ 86(c)-(i)). Plaintiff's allegations seem to focus upon negligent hiring, retention, supervision, and training (*see* doc. 25, ¶ 86(i)), but he did not specify which individuals were allegedly wrongfully hired, retained, supervised, or trained, or which defendants should be held liable for negligence. Thus, the Court agrees with defendants that plaintiff has failed to adequately plead his negligence claim. When repleading, plaintiff should be sure to identify which defendants owed him a legal duty, what that duty was, how they breached that duty, what his injuries were, and how the specified defendants' negligent acts and/or omissions caused his injuries. *See Aliant Bank, a Division of USAmeribank v. Four Star Investments, Inc.*, 244 So. 3d 896, 907 (Ala. 2017) (citations omitted) ("The elements of a negligence claim are a duty, a breach of that duty, causation, and damage.").

### c. Disability discrimination and harassment

For his disability discrimination claim, plaintiff alleges that the Charter defendants failed to engage in an interactive process and denied him reasonable accommodations of his disability (doc. 25, ¶¶ 87-89). For his harassment claim, plaintiff does not state any facts, but merely references his previous allegations (doc. 25, ¶ 90). To the extent plaintiff intended to bring any of these claims pursuant to federal statutes, they have already been addressed. To the extent plaintiff intended to assert state law claims for disability discrimination and

harassment, those claims are not available under Alabama law. *See Hand v. University of Alabama Board of Trustees*, 304 F. Supp. 3d 1173, 1183 (N.D. Ala. 2018) ("Alabama law provides no common-law tort claim for sex or disability discrimination in employment . . . ."); *Edwards v. Prime, Inc.*, No. CIV.A. 08-AR-1016-S, 2008 WL 9393800, at *11 (N.D. Ala. Dec. 11, 2008) ("Neither discrimination nor harassment constitutes a common law tort.").

### d.      Outrage and defamation

Even though plaintiff has combined his outrage and defamation claims into one cause of action (*see* doc. 25, at 88 ("'OUTRAGEOUS CONDUCT' by 'PROFESSIONAL EXECUTIVES' and who 'BAD MOUTH' Pro Se Plaintiff with 'LIBEL'") (capitalization in original)), he alleges different facts to support each claim.

To support the outrage claim, plaintiff asserts that, on March 22, 2016, he sent an email to defendant Rutledge, and copied defendants O'Rourke and Erway, as well as two other Charter employees who have not been named as defendants. Plaintiff, complained of retaliation, harassment, discrimination, hostile work environment, unsafe working conditions, and "continued gross corporate malfeasance" (doc. 25, ¶ 91).  At the conclusion of the email, he requested a transfer to either New York or Florida to be closer to his children.  On July 10, 2016, plaintiff received a threatening anonymous email from a "guerillamail"

address, telling him "it is time," and that he needed to leave town (*id.*). Because he never mentioned wanting to leave town to anyone other than the recipients of his March 22 email, plaintiff deduced that the threatening email of July 10 must have come from one of those recipients. He even used an unspecified website to trace the July 10 email, and determined its origin was Dallas, Texas, "near" Charter's corporate headquarters (*id.*).

> For a plaintiff to recover under the tort of outrage, []he must demonstrate that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it. *Green Tree Acceptance, Inc. v. Standridge*, 565 So.2d 38, 44 (Ala. 1990). The conduct complained of must "be so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." *Id*.

*Wilson v. University of Alabama Health Services Foundation, P.C.*, – So. 3d –, 2017 WL 6397654, at *2 (Ala. Dec. 15, 2017). First, the actions plaintiff complains of, while deplorable if true, do not rise to the level of outrage recognized by the Alabama courts. The decision of the Middle District of Alabama in *Palmer v. Infosys Technologies, Ltd., Inc.*, 888 F. Supp. 2d 1248 (M.D. Ala. 2012), is instructive. After complaining of visa fraud by his India-based company, Palmer received the following threats:

> • On October 27, 2010, at 12:37 a.m., Palmer's wife answered their home phone and a man with an Indian accent asked to speak with him. His wife said he was unavailable, and the caller mumbled something and hung up. A similar incident occurred that same night at 2:27 a.m.

• Palmer has received other threatening calls along the lines of "Why are you doing this, you stupid American, we have been good to you."

• On February 28, 2011, Palmer reported to work to find a note on his keyboard stating that, "Jack: Just leave your not wanted here hope your journey brings you death stupid American." . . . . When Palmer turned on his computer, a word document displayed the same message.

• On April 21, 2011, Palmer received an email stating that, "if you make cause for us to sent back to india we will destroy you and yuor [*sic*] family." . . .

• On May 25, 2011, Palmer received a threat through his LinkedIn account from Vinodbhai Mankar, an Indian national and self-professed "advocate" of Infosys: "you still working at infy? they should have fired you long back ... after you stabbed their back by falsely implicating them on the misuse of visa. unfortunately infy is an indian company and indian's don't stab ... even in the front. that's what hypocrites like you take advantage of. Hope they learn the rule of Tit for Tat. I just wish you were here in India. we would have taken *good* care of you."

*Palmer*, 888 F. Supp. 2d at 1251-52. The Middle District of Alabama noted that "Alabama courts have especially cabined the tort of outrage" in the context of at-will employment, presumably because there are other laws to address egregious workplace behavior. *Id.* at 1254. Thus, the court found that "while the electronic and telephonic threats and anti-American statements are deeply disturbing, it is clear that the Alabama Supreme Court would not view them as 'beyond all possible bounds of decency,' so that it must 'be regarded as atrocious and utterly intolerable in a civilized society.'" *Id.* at 1255 (quoting *American Road Service*

*Co. v. Inmon*, 394 So.2d 361, 65 (Ala. 1980)). If the multiple threats Palmer received were not enough to support an outrage claim, then the single threat plaintiff received also is not enough. Additionally, plaintiff has acknowledged that he does not know who sent the threatening email. He may suspect that it was one of the Charter defendants, but speculation and suspicion are not enough to satisfy the pleading standard, which requires more than just the "mere possibility" of the defendant's misconduct. *See Ashcroft*, 556 U.S. at 679. Plaintiff's outrage claim will be dismissed.

To support his defamation claim, plaintiff asserts that on May 4, 2017, defendant Brown "emailed said Plaintiff a Letter ADDRESSED TO: the THIRD PARTY Health Care Provider of said Plaintiff, in order for the said Plaintiff to Present to HIS (said Plaintiff's) Doctor" (doc. 25, ¶ 93 (capitalization in original)). Brown falsely "indicated HE (said Plaintiff) was SUICIDAL caused by HIS (said Plaintiff's) Medications and Also Falsely PURPORTED that said Plaintiff mentioned HIS (said Plaintiff's) eyesight is failing affecting HIS (said Plaintiff's) ability to drive" (*id.* (capitalization in original)). Brown allegedly made those false statements in order to persuade plaintiff's doctor to provide evidence that would prevent plaintiff's return to work (*id.*).

> The elements of a cause of action for defamation are: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either

actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement.

*Dolgencorp, LLC v. Spence*, 224 So. 3d 173, 186 (Ala. 2016) (quoting *Wal-Mart Stores, Inc. v. Smitherman*, 872 So.2d 833, 840 (Ala. 2003) (in turn quoting *McCaig v. Talladega Publishing Co.*, 544 So.2d 875, 877 (Ala. 1989))) (internal quotation marks omitted).  It is unclear whether plaintiff has satisfied the element of publication to a third party.  In his amended complaint, he appears to allege that Brown sent the letter containing the negative statements only to plaintiff himself (doc. 25, ¶ 92), but in his response to the motion to dismiss, he appears to allege that the letter was sent to plaintiff's doctor (doc. 38, ¶ 9).  The Court normally would not consider statements made in a brief in evaluating the adequacy of a pleading, but given plaintiff's *pro se* status, the Court will allow plaintiff to clarify his allegations through an additional amended pleading.  The amendment should state whether the allegedly defamatory communications were shared with a third party, and should also address defendants' argument that plaintiff failed to either plead special damages or explain why the claim should be actionable in the absence of special damages.

### e.    Breach of fiduciary duty

The requirements for a breach of fiduciary duty claim under Alabama law are "the existence of a fiduciary duty, a breach of that duty, and damage suffered as a result of that breach."  *Aliant Bank*, 244 So. 3d at 907 (citing *Regions Bank v.*

*Lowrey*, 101 So.3d 210, 219 (Ala. 2012)).  To support his breach of fiduciary claim, plaintiff alleges that he always maintained his duty of loyalty to Charter during his employment, and he makes reference to an Alabama statute preventing employers from terminating employees who claim worker's compensation benefits or file notice of a safety violation under the worker's compensation laws (doc. 25, ¶¶ 94-95; *see* Ala. Code § 25-5-11.1).  Plaintiff's claim does not concern worker's compensation, and the Alabama Supreme Court has held that "a principal or employer is not the fiduciary of the agent or employee." *Miller v. SCI Systems, Inc.*, 479 So. 2d 718, 720 (Ala. 1985)).  Thus, plaintiff has not alleged the existence of any fiduciary duty owed by any defendant, much a less a breach of that duty or resulting damages.  The breach of fiduciary duty claim will be dismissed.

### f.     Breach of contract

As stated above, the requirements of a breach of contract claim under Alabama law are the existence of a valid contract, plaintiff's performance under the contract, defendant's non-performance, and damages. *Capmark Bank*, 81 So. 3d at 1267 (citing *Reynolds Metals Co.*, 825 So.2d at 105).  Plaintiff's allegations in support of his breach of contract claim are the same as the allegations in support of his breach of fiduciary duty claim (*see* doc. 25, ¶¶ 96-97).  He has not alleged the existence of any contract between him and any of the Charter defendants, much

less a breach of that contract or resulting damages.  Accordingly, his breach of contract claim will be dismissed.

## III. CONCLUSION AND ORDERS

Based on the above, it is ORDERED as follows:

Sedgwick's motion to dismiss (doc. 31) is GRANTED, and all claims against Sedgwick are DISMISSED.

Dhaliwal's motion to dismiss (doc. 30) is GRANTED in part and DENIED in part.  Plaintiff's breach of contract claim against Dhaliwal, unrelated to the provision of medical treatment, will remain pending.  All other claims against Dhaliwal are DISMISSED.

The Charter defendants' motion to dismiss (doc. 34) is GRANTED in part and DENIED in part.  The following claims against defendant Charter Communications, Inc. d/b/a Spectrum Communications, Inc., are DISMISSED: FMLA interference, ADA, 42 U.S.C. § 1983, Fourteenth Amendment, wrongful termination, state law disability discrimination, state law harassment, outrage, breach of fiduciary duty, and breach of contract.  The following claims against defendants Thomas M. Rutledge, Amanda Field, Craig O'Rourke, Stacia Freeway, R.C. Brown, Matt Webb, and Lumumba Pride are DISMISSED:  FMLA interference, ADA, Title VII, 42 U.S.C. § 1983, Fourteenth Amendment, wrongful termination, state law disability discrimination, state law harassment, outrage,

breach of fiduciary duty, and breach of contract. Plaintiff's claims against *all* of the Charter defendants for FMLA retaliation, 42 U.S.C. § 1981 violations, negligence, and defamation will remain pending, as will plaintiff's claim against Charter *only* for Title VII violations.

**With regard to the remaining claims, plaintiff is ORDERED to file a Second Amended Complaint by April 5, 2019**. Plaintiff is advised that the Second Amended Complaint will be his last opportunity to precisely and fully plead his claims in accordance with the requirements of Federal Rules of Civil Procedure 8(a), 8(d), 10(b), and 11(b) and this court's orders. The Second Amended Complaint will be viewed with less deference to plaintiff's *pro se* status. It should not include or refer to any of the claims that were dismissed in this order, or to any of the facts that support those dismissed claims. It should not include citation to legal authority or personal pleas to the judge. Plaintiff should avoid drafting another shotgun pleading. For each cause of action (Title VII, breach of contract, etc.), plaintiff should state in the heading for that cause of action which defendant(s) the claim is being brought against. Although this exact format is not necessary, it might look something like this: "Count One - FMLA Retaliation - Charter," or "Count One - FMLA Retaliation - Charter, Rutledge, and Pride." If more than one defendant is named for a particular cause of action, plaintiff must state facts *under that heading* that support *each defendant's* liability for that claim.

Plaintiff cannot rely upon "parallel claims," "self evident facts," or references to previous pleadings (*see* doc. 25, ¶¶ 57, 87, 90, 95, 97, 98, 99, 100, 101, 102).

**Failure to comply with this memorandum opinion and order will result in the dismissal of plaintiff's lawsuit.**

Plaintiff's motions for appointment of counsel (docs. 36, 43) both are DENIED.

**DONE** and **ORDERED** March 14, 2019.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE